J. R. MONROE and Kathleen Monroe,
Plaintiffs,

v.

George D. PATTERSON, District Director of Internal Revenue, Defendant.

Roy D. HICKMAN and Dorothy D. Hickman, Plaintiffs,

v.

George D. PATTERSON, District Director of Internal Revenue, Defendant.

Civ. A. Nos. 9479, 9493.

United States District Court
N. D. Alabama, S. D.

June 27, 1961.

Burgin Hawkins, Birmingham, Ala., for plaintiffs.

W. L. Longshore, U. S. Atty., Birmingham, Ala., for defendant.

JOHNSON, District Judge.

The above-styled cases, having been consolidated for purposes of trial by order of the Court entered upon the pretrial hearing, were submitted on the issues made up by the pleadings and proof. Upon this submission, consisting of the written stipulation of the parties and the several exhibits thereto, in addition to the pleadings and briefs from the parties, this Court now proceeds to make findings of fact and conclusions of law.

These actions are of a civil nature, arising under the internal revenue laws of the United States, wherein plaintiffs in each case seek recovery of amounts paid as income taxes; and this Court has jurisdiction under § 1340, Title 28, United States Code. In Civil Action No.

9479, plaintiffs, husband and wife residing in Birmingham, Alabama, filed their joint federal income tax return for the year 1955 on April 17, 1956, reporting a tax of $2,988.17, which amount was fully paid on or before the filing of the return. In Civil Action No. 9493, plaintiffs, husband and wife residing in Birmingham, Alabama, filed their joint federal income tax return for the year 1955 on April 17, 1956, reporting a tax of $3,396.97, which amount was fully paid on or before the filing of the return.

The controversy in both cases arises from the following facts:

1. The Alabama Engraving Company, Inc., an Alabama corporation, was organized out of a partnership in 1911. Two members of that partnership were Samuel N. Gore and the husband of Mrs. Carrie H. Ganster, who became controlling shareholders upon incorporation. J. R. Monroe and Roy D. Hickman were employees of the Alabama Engraving Company, Inc. Since prior to 1936, Monroe and Hickman have also been stockholders of the company. On March 26, 1936, the stock in the company was held as follows:

Mrs. Carrie H. Ganster....72½ shares
S. N. Gore................55 shares
J. R. Monroe.............45 shares
Roy D. Hickman..........25 shares

2. On January 22, 1931, for a premium of $294.75 per year, S. N. Gore purchased on his own life insurance policy No. 8,351,265, issued by The Equitable Life Assurance Society of the United States in the face amount of $5,000. The Alabama Engraving Company, Inc., was named as beneficiary. The company paid the premiums from 1931 through 1933. Gore presumably paid the premiums from 1933 until March 26, 1936. On March 26, 1936, said policy No. 8,351,-265 was assigned to Mrs. Pearl Copeland, Gore, and Mrs. Carrie H. Ganster in accordance with an agreement of that date incorporated hereinafter in paragraph 4.

3. On February 2, 1931, the Alabama Engraving Company, Inc., purchased a policy on the life of Samuel N. Gore, No. 1,618,847, issued by the Travelers Insurance Company in the face amount of $5,-000. The Alabama Engraving Company, Inc., was named as beneficiary, and premiums were paid by it until March 26, 1936.

4. On March 26, 1936, an agreement was entered into between Samuel N. Gore and Mrs. Carrie H. Ganster as parties of the first part, and Monroe and Hickman as parties of the second part. In accordance with the terms of the agreement the two insurance policies were duly assigned to Mrs. Gore and Mrs. Ganster in trust to collect and pay over the proceeds therefrom to Mrs. Carrie H. Ganster and to the Estate of Samuel N. Gore as all or part of the purchase price for the shares of capital stock of the Alabama Engraving Company, Inc., upon the death of Gore. Pursuant to the terms of the agreement, Monroe and Hickman each undertook to pay and did pay one-third of the annual premiums for the two insurance policies, the other one-third being paid by Samuel Gore.

5. On December 11, 1948, the same parties entered into a revised agreement. Pursuant to the terms thereof, Monroe and Hickman each continued to pay one-third of the premiums for the two insurance policies and Gore one-third. Over the years Monroe and Hickman paid premiums totaling $3,051.90 each.

6. Samuel N. Gore died on December 15, 1954. In accordance with the terms of the agreement of December 11, 1948, a value of $310.52 per share for the 127½ shares of stock owned by Gore and Mrs. Ganster was agreed on, and the sale of these shares, 63.75 to Monroe and 63.75 to Hickman, was consummated in 1955. The proceeds of the two insurance policies were as follows:

No. 8,351,265...............$ 7,146.84
No. 1,618,847...............$ 5,000.00
Total.........$12,146.84

Using the agreed value of $310.52 per share, the total purchase price of the 127½ shares equaled $39,591.30. In ac-

148

cordance with the agreement, the proceeds of the two insurance policies in the total amount of $12,146.84 were applied against the total purchase price of $39,591.30, the remaining balance of $27,444.46 being paid in cash in equal proportion by Monroe and Hickman. In accordance with the terms of the agreement Mrs. Ganster and the Estate of Samuel N. Gore transferred 63.75 shares of stock to Monroe and 63.75 shares of stock to Hickman. Neither Monroe nor Hickman reported as taxable income the difference between the amount of premiums each had paid and the proceeds from the two insurance policies paid to Mrs. Ganster and the Estate of Samuel N. Gore as part payment for the said stock.

7. Upon audit of the 1955 tax returns, the District Director determined that the plaintiffs realized taxable income under §§ 61(a) and 101(a) (2) of the Internal Revenue Code of 1954, 26 U.S.C. §§ 61 (a), 101(a) (2) in the amount of $3,021.52 to the Monroes and $3,021.52 to the Hickmans from the constructive receipt in 1955 of the proceeds or benefit of the proceeds of the two insurance policies in excess of the premiums paid. Accordingly, additional assessments based upon inclusion of these amounts in taxable income were made as follows:

Civil No. 9479 ......$ 906.46  Tax
                       118.58  Interest
         Total ......$1,025.04

Civil No. 9493......$ 967.40  Tax
                    $ 126.56  Interest
         Total ......$1,093.06

These additional assessments were paid on July 2, 1958. On October 22, 1958, plaintiffs filed timely claims for refund, Form 843, with the District Director of Internal Revenue, Birmingham, Alabama, seeking refund of the amount of the additional assessments. Said claims for refund were disallowed by statutory notice of disallowance on January 19, 1959.

The question presented is whether the taxpayers in each case are taxable on the proceeds of the two insurance policies which were used to pay a part of the purchase price for the 127½ shares of stock in the Alabama Engraving Company, Inc., which taxpayers acquired pursuant to the agreement of December 11, 1943. In other words, were the proceeds received by the taxpayers income within §§ 61 and 101(a) (2), Internal Revenue Code of 1954?

The taxpayers contend that there was no transfer of the life insurance policies for a valuable consideration and that the proceeds from these life insurance policies were only used as a part of a formula in determining the purchase price of the stock, and, therefore, taxpayers are not taxable on the insurance proceeds from the two policies.

The agreement entered into between the parties on March 26, 1936, evidence the intention of Samuel N. Gore and Mrs. Carrie H. Ganster to have taxpayers Monroe and Hickman purchase all the capital stock of Alabama Engraving Company, Inc., upon the death of Gore. Prior to March 26, 1936, two insurance policies were purchased on the life of Gore in which the Engraving Company was named beneficiary. In accordance with the agreement of March 26, 1936, the two insurance policies were duly assigned to Mrs. Gore and Mrs. Ganster in trust to collect and pay over the proceeds as all or part of the purchase price to be paid by taxpayers for the stock of the Engraving Company upon the death of Gore. Pursuant to the terms of the agreement, the taxpayers agreed to pay part of the insurance premium in consideration of the promise by Gore and Mrs. Ganster to assign the two policies and sell the stock at a specified price.

On December 11, 1948, the parties entered into another agreement, and this agreement is controlling, since it was in effect upon the death of Gore. The agreement of December 11, 1948, is essentially the same as that of March 26, 1936, except the method for determining the purchase price of the stock was materially changed.

█ The general rule is that proceeds of life insurance policies are excluded from the gross income of the recipient if paid by reason of the death of the insured. The exception to this general rule is that in the case of a transfer of a life insurance contract for a valuable consideration the amount to be excluded from gross income is limited to the consideration and premiums paid by the transferee.[1]

█ The consideration for the transfer of the two insurance policies was the mutuality of obligations and the actual cash consideration paid by taxpayers Monroe and Hickman in premiums, which was an integral part of the consideration for the assignment of the insurance policies for the use and benefit of the taxpayers.

The taxpayers may exclude the amounts paid as premiums or any other consideration paid by them for the transfer of the insurance policies, but they cannot exclude sums paid by others. Treasury Regulations on Income Tax, § 1.101–1(b).

The exclusion provisions under § 101 (a) (2) for transferees are not so flexible in cases involving transfers from co-shareholders in a corporation as they are in cases involving partners in a partnership. For example, the statute permits a transfer of a policy on the life of a shareholder or officer *to the corporation,* but it does not extend to a transfer of a policy from the corporation to a shareholder or officer, or a transfer between co-shareholders or co-officers. See Mertens, Law of Federal Income Taxation, Code Commentary, Chapter 1, Subchapter B, page 66.

The argument of the taxpayers that the proceeds of the two insurance policies were used only to arrive at the purchase price of the stock is not supported by the facts. The agreement of December 11, 1948, affirmatively shows that the purchase price of the stock of the company was to be "fair and reasonable" and " * * * shall be the excess of its corporate assets * * * over corporate liabilities." When Gore died, taxpayers Monroe and Hickman elected under the agreement to purchase the stock for $39,-591.30, and the proceeds of the two insurance policies, $12,146.84, were applied for their benefit in part payment of this purchase price. The proceeds of the policies were thus constructively received in exchange for a valuable consideration, the payment of premiums and the mutual obligation to purchase the stock. Therefore, the taxpayers must include the amount of the proceeds received in excess of premiums paid in their respective gross incomes.

Judgment in each case will be entered accordingly.

---

1. Internal Revenue Code of 1954, § 101:
"§ 101. Certain death benefits
"(a) *Proceeds of life insurance contracts payable by reason of death.*—
"(1) *General rule.*—Except as otherwise provided in paragraph (2) and in subsection (d), gross income does not include amounts received (whether in a single sum or otherwise) under a life insurance contract, if such amounts are paid by reason of the death of the insured.
"(2) *Transfer for valuable consideration.*—In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance contract or any interest therein, the amount excluded from gross income by paragraph (1) shall not exceed an amount equal to the sum of the actual value of such consideration and the premiums and other amounts subsequently paid by the transferee. The preceding sentence shall not apply in the case of such a transfer—
"(A) if such contract or interest therein has a basis for determining gain or loss in the hands of a transferee determined in whole or in part by reference to such basis of such contract or interest therein in the hands of the transferor, or
"(B) if such transfer is to the insured, to a partner of the insured, to a partnership in which the insured is a partner, or to a corporation in which the insured is a shareholder or officer."